UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Red Rhino Leak Detection, Inc.,                    File No. 18-cv-3186 (ECT/DTS)

    Plaintiff and Counterclaim
    Defendant,

v.                                                 **OPINION AND ORDER**

Anderson Manufacturing Company, Inc.,

    Defendant and
    Counterclaimant.

---

Kelly G. Swartz and Mark F. Warzecha, Widerman Malek, PL, Melbourne, FL, and Jack E. Pierce, Bernick Lifson, Minneapolis MN, for Plaintiff and Counterclaim Defendant Red Rhino Leak Detection, Inc.

Devan V. Padmanabhan and Erin O. Dugan, Padmanabhan & Dawson, PLLC, Minneapolis, MN for Defendant and Counterclaimant Anderson Manufacturing Company, Inc.

---

This case is the second of two patent-infringement cases pending in this District between Plaintiff Red Rhino Leak Detection, Inc. and Defendant Anderson Manufacturing Company, Inc. In the earlier-filed action, Red Rhino alleged that a product Anderson sold for detecting leaks in swimming pools violated U.S. Patent No. 9,464,959 ("the '959 Patent"). In this case, Red Rhino alleges that two of Anderson's products, the Light Tester and the LeakTrac Light Cover Version 2 (the "Light Cover" and, with the Light Tester, the "Accused Products") infringe Red Rhino's U.S. Patent No. 10,088,383 (the '383 Patent"), of which the '959 Patent is a parent patent. Am. Compl. ¶ 9, Counts I–III [ECF No. 16]; *id.* Ex. B at 1 (the "'383 Patent") (identifying parent parents) [ECF No. 16-2 at 2].

Anderson did not move to dismiss Red Rhino's First Amended Complaint in this action; instead, on January 2, 2019, it answered and counterclaimed, seeking declaratory judgments of non-infringement, invalidity, and unenforceability. Countercl. Counts I–III [ECF No. 19]. Two months later, on March 1, 2019, Anderson moved for Rule 11 sanctions against Red Rhino and its counsel, in the form of an order "awarding Anderson Manufacturing its attorney's fees incurred in defending Red Rhino's baseless claims, and dismissing this action with prejudice." ECF No. 27. The Court held a single hearing on Anderson's sanctions motion in this action and on claim construction, cross-motions for summary judgment, and a motion to exclude expert testimony in the first-filed Red Rhino case. *See* ECF Nos. 48, 50. The motions in the first-filed case have been resolved by a separate order. *See generally Red Rhino Leak Detection, Inc. v. Anderson Mfg. Co., Inc.*, No. 17-cv-2189 (ECT/DTS), 2019 WL 4039972 (D. Minn. Aug. 27, 2019) ("*Red Rhino I*"). For the reasons that follow, Anderson's motion for sanctions in this action will be denied.

Under the relevant portions of Rule 11(b), an attorney filing a complaint "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims . . . are warranted by existing law . . . ; [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" Fed. R. Civ. P. 11(b). "Rule 11 requires that an attorney

conduct a reasonable inquiry of the factual and legal basis for a claim before filing."[1] *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003). A reasonable inquiry requires that "the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis." *Id.* In resolving a Rule 11 motion, the district court inquires "whether a reasonable and competent attorney would believe in the merit of an argument." *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (quotation omitted).

In the context of the pre-suit investigation of a patent claim, Rule 11 requires, "at a minimum . . . that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300–01 (Fed. Cir. 2004). In doing so, an attorney may not simply rely on the claim construction of his or her client, "but instead [must] perform an independent claim analysis." *Antonious v. Spalding & Evenflo Companies*, 275 F.3d 1066, 1072 (Fed. Cir. 2002). A plaintiff claiming infringement "must be prepared to demonstrate to both the court and the alleged infringer exactly why it believed before filing the claim that it had a reasonable chance of proving infringement." *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000).

---

[1] In resolving Rule 11 motions brought in patent cases, the law of the regional circuit in which the district court sits applies. *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1299 (Fed. Cir. 2004). Therefore, Eighth Circuit cases provide the standard applicable to the resolution of this motion, though Federal Circuit case law may provide relevant, persuasive authority as to how that standard applies in the context of a pre-suit investigation of a patent claim. *See id.* at 1299–1301 (applying both Ninth Circuit and Federal Circuit case law in reviewing denial of motion for sanctions under Rule 11 originally decided in the Western District of Washington).

Red Rhino's First Amended Complaint accuses Anderson of direct infringement, induced infringement, and contributory infringement of multiple claims of the '383 Patent. *See* Am. Compl. at Counts I–III. For purposes of this motion, the Parties focus all but exclusively on claim 1, which is the only independent claim Red Rhino asserts, and furthermore focus on the direct-infringement claim, because without a showing of direct infringement, an induced-infringement or contributory-infringement claim cannot succeed. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010) ("To prove inducement, the patentee must show direct infringement, and that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." (quotation omitted)); *Refac Int'l, Ltd. v. IBM*, 798 F.2d 459, 460 (Fed. Cir. 1986) ("Proving direct infringement is essential to proving contributory infringement."). Accordingly, the question presented by Anderson's Rule 11 motion is whether Red Rhino conducted a reasonable inquiry, and discovered a reasonable legal and factual basis, for its claim that the Light Tester and the Light Cover directly infringe claim 1 of the '383 Patent, which basis a reasonable and competent attorney would believe to be meritorious. *Coonts*, 316 F.3d at 753; *Miller*, 985 F.2d at 939.

Claim 1 of the '383 Patent claims, in relevant part:

> A leak detecting device for a swimming pool light in a water filled swimming pool comprising:
>
> a housing having a continuous perimeter edge sized to extend around a swimming pool light forming a hollow interior having a threaded rod extending through an aperture in said housing;

> an anchoring attachment secured to an end of the threaded rod for immovably anchoring the housing to an underwater swimming pool light;
>
> an annular resilient seal secured to said perimeter edge . . . ;
>
> **an inlet forming an opening through said housing and extending into the opening** providing accessible [sic] from an exterior **to selectively deliver a dye solution for leak detection purposes** into the interior of said housing;
>
> **whereby the flow of the dye inserted in the interior is observable by a user of the device for determining leakage underwater** within the defined perimeter relative to the defined underwater surface of the swimming pool.

"'383 Patent" at claim 1, 6:19–43 (emphasis of relevant terms added) [ECF No. 16-2 at 17].

Anderson argues that Red Rhino's infringement claims—as to both of the Accused Products—are "baseless," "frivolous," and "brought in bad faith," Anderson Br. at 4, because "[a] cursory evaluation of the claims of the '383 Patent against the [A]ccused [P]roducts establishes that there is no reasonable basis to allege infringement," *id.* at 2. Anderson's argument why that is so differs somewhat with respect to each of the Accused Products, and therefore each of those products will be addressed separately.

Anderson contends that the Light Tester cannot possibly infringe claim 1 of the '383 Patent because that claim requires that "the flow of the dye inserted in the interior is observable by a user of the device," '383 Patent at 6:39–40, and the Light Tester has an opaque dome—in other words, that the construction of the Light Tester makes it impossible for a user of the device to observe the flow of dye once it is inserted in the interior of the

housing. Anderson Br. at 18 ("In fact, [the dome] is so opaque that a user of the device would not be able to observe the flow of dye in the interior of the housing even if he or she wanted to."); *see also id.* at 23–24. By contrast, Red Rhino attached to its Amended Complaint a claim chart comparing the Light Tester to claim 1, which contained its interpretation that the Light Tester infringes claim 1 in relevant part because "[d]ye flowing through the inlet . . . and into the interior is observable by a user of the" Light Tester for the purpose of detecting leaks. Am. Compl. Ex. C at 5 [ECF No. 16-3]. In other words, Red Rhino contends that this term is met because users may observe the flow of dye as it enters the inlet, regardless of whether they may also observe the flow of dye once it is inside the housing. Red Rhino Br. at 4.

Anderson argues that the other Accused Product, the Light Cover, cannot possibly infringe claim 1 of the '383 Patent for two distinct reasons. First, it argues, the Light Cover does not have "an inlet forming an opening through [the] housing," as claim 1 requires, *see* '383 Patent at 6:35; rather it has a housing that contains two plugs that are closed with what appear to be wingnuts or similar fittings, "meaning that nothing can be delivered into the interior of the housing." Anderson Br. at 25. Second, it argues, the Light Cover is intended to be used as part of a larger system that detects leaks using electrical signals, and is not designed to be used in conjunction with any dye, and therefore cannot infringe claim 1 of the '383 Patent, which claims a device that uses dye to detect leaks. Anderson Br. at 19–20; *see also id.* at 26.

Fundamentally, all of these are claim-construction disputes. Unless Red Rhino's proffered construction of the relevant claim terms is so lacking in legal basis, or its

application of those terms to the Accused Products is so deficient as a factual matter, that a reasonable and competent attorney would not believe in the merit of Red Rhino's direct-infringement claim, Red Rhino has satisfied the standard set by Rule 11. *See Miller*, 985 F.2d at 939. Without expressing any opinion as to how the claims at issue might ultimately be construed after thorough discovery and briefing, the Court concludes at this early stage that a reasonable and competent attorney would believe the legal and factual bases of Red Rhino's direct-infringement claim have merit.

As to the Light Tester, it is true that the claim term referring to "the flow of the dye *inserted* in the interior" (emphasis added) might reasonably suggest that the dye is deposited directly inside the housing via the inlet. Such an understanding would be incompatible with Red Rhino's reading of the relevant claim term, which calls for dye to be deposited outside the housing such that it can be observed as it flows through the inlet, even if it cannot be observed once it is inside. But claim 1 elsewhere calls for the inlet to "selectively deliver a dye solution," '383 Patent at 6:37, and the Court recently construed a similar term in the parent '959 Patent—"to selectively deliver fluid through the inlet"—as meaning the capacity of the inlet to "deliver, or not deliver, fluid through the inlet according to the operation of natural hydrodynamic forces and the presence or absence of a leak." *Red Rhino I*, 2019 WL 4039972, at *6–8. Without expressing any opinion about how this apparent tension between the terms in claim 1 of the '383 Patent might ultimately be resolved through claim construction, the sheer existence of the tension indicates that a reasonable and competent attorney might indeed agree with Red Rhino's understanding of the claim terms implicated by the Parties' dispute over the Light Tester.

As for the Light Cover, a reasonable and competent attorney might fairly conclude, as Red Rhino argues, that in light of Federal Circuit precedent holding that "apparatus claims cover what a device *is*, not what a device *does*," *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir. 1990), the fact that the Light Cover was not intended to be used with dye does not necessarily mean that it cannot possibly infringe a claim that calls for the use of dye, assuming that the structural elements of the claim are all met. Furthermore, the admitted existence of plugs also reasonably suggests the presence of holes—inlets, in the parlance of the claim—from which one plug could be removed, arguably satisfying the claim term that calls for "an inlet forming an opening through [the] housing." '383 Patent at 6:35. Or, at least, a reasonable and competent attorney could find merit in such an argument.

Again, the Court expresses no opinion about any of these potential constructions. But at this early stage, the Court concludes that Red Rhino conducted a reasonable pre-suit inquiry and discovered a reasonable legal and factual basis for its claim that the Accused Products infringe the '383 Patent. *Coonts*, 316 F.3d at 753. In doing so, it satisfied its Rule 11 obligations prior to filing suit.

**ORDER**

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendant Anderson Manufacturing Company's Motion For Sanctions Pursuant To Federal Rule Of Civil Procedure 11 [ECF No. 27] is **DENIED**.

Dated: September 16, 2019
              s/ Eric C. Tostrud
              Eric C. Tostrud
              United States District Court